IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Criminal No. 3:16-CR-516-D (1) |
| | § | |
| ALAN ANDREW BEAUCHAMP, | § | *This memorandum opinion and order was originally filed |
| | § | under seal on April 4, 2017. It is being filed unsealed |
| Defendant. | § | because the parties agree that it need not remain sealed. |

MEMORANDUM OPINION
AND ORDER

The United States of America (the "government") moves on two grounds to disqualify defendant Alan Andrew Beauchamp's ("Beauchamp's") retained counsel, William McMurrey, Esquire ("McMurrey"). Concluding that the government has not met its burden on either ground, the court denies the motion.

I

Following a four-year government investigation, the grand jury indicted Beauchamp for his alleged involvement in a healthcare bribery and kickback scheme at Forest Park Medical Center ("FPMC"). As relevant to the instant motion, the government alleges that FPMC illegally bribed Dr. Shawn Henry ("Dr. Henry") in exchange for his sending patients to FPMC. The government contends that FPMC bribed Dr. Henry using two sham agreements for services he did not perform: one for Dr. Henry to serve as an on-call spine

surgeon for FPMC's emergency room ("Emergency Room Agreement"), and one for consulting services ("Consulting Agreement").[1]

McMurrey performed legal work for FPMC prior to the investigation, and he has represented Beauchamp personally since the investigation began. The government contends that McMurrey advised FPMC on both the Emergency Room Agreement and the Consulting Agreement. McMurrey acknowledges that he worked on the Emergency Room Agreement, but he denies any knowledge of the Consulting Agreement. McMurrey also briefly represented Garry Craighead ("Craighead"), whom the government identifies as a potential witness in its case. According to the government, Craighead also received bribe and kickback payments from FPMC.

The government moves to disqualify McMurrey based on an alleged conflict of interest arising from his alleged work on the Emergency Room Agreement and Consulting Agreement, as well as his prior representation of Craighead. Beauchamp opposes the motion.

II

"[D]isqualification cases are governed by state and national ethical standards adopted by the court.'" *United States v. Starnes*, 157 Fed. Appx. 687, 693 (5th Cir. 2005) (per curiam) (alteration in original) (quoting *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1311 (5th

---

[1]The Consulting Agreement allegedly involved an agreement between FPMC and a third party. The third party then allegedly paid Dr. Henry for consulting services he did not perform.

Cir. 1995)). As the party seeking disqualification, the government bears the burden of proof. *In re Am. Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992) ("[T]he party seeking disqualification bears the burden of pro[of.]").[2]

The government advances two arguments for why McMurrey should be disqualified: first, that he is a necessary witness, and, second, that he has a conflict from his prior representation of a potential witness.

III

The court first considers whether McMurrey is a necessary witness in this case.

A

Rule 3.08(a) of the Texas Disciplinary Rules of Professional Conduct states:

> A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless . . . the testimony relates to an uncontested issue [or] the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony[.]

---

[2]The Fifth Circuit is "sensitive to preventing conflicts of interest." *In re ProEduc. Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (quoting *In re Am. Airlines*, 972 F.2d at 611). A district court is therefore "*obliged* to take measures against unethical conduct occurring in connection with any proceeding before it." *In re Am. Airlines*, 972 F.2d at 611 (emphasis in original) (citing *Woods v. Covington Cnty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976)).

Tex. Disciplinary R. Prof'l Conduct 3.08(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A, Art. 10, § 9 (West 2017).  Similarly, Rule 3.7(a) of the American Bar Association Model Rules of Professional Conduct provides, in relevant part:

> A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

Model Rules of Prof'l Conduct R. 3.7(a) (2016).  These "lawyer-as-witness" rules are not implicated, however, "unless the lawyer 'is likely to be a necessary witness.'"  *Starnes*, 157 Fed. Appx. at 693 (quoting *United States v. Watson*, 87 F.3d 927, 932 (7th Cir. 1996)).  "A lawyer is not 'likely to be a necessary witness' when evidence pertaining to each matter to which he could testify is available from another source."  *Id*. at 693-94 (citing *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 267 (5th Cir. 2001)); *see also Horaist*, 255 F.3d at 267 (holding that, because lawyer's potential testimony was cumulative of other evidence, lawyer was not necessary witness and trial court did not err in refusing to disqualify him).

B

The government first contends that McMurrey will likely be a necessary witness for some defendants (including Beauchamp) because his alleged consultation on the Consulting Agreement and the Emergency Room Agreement might legitimize the agreements.  In its brief, the government notes that a document entitled "Analysis of Real Estate Consulting Services Arrangement," prepared on behalf of FPMC, lists McMurrey as the client contact.

Gov't Br. 5. The government appears to infer from this document that McMurrey was "potential[ly] involve[d] in obtaining a fair market value analysis of the [C]onsulting [A]greement . . . [and was] likely presen[t] at a meeting when the agreement was signed." *Id.* at 10-11. The government maintains that McMurrey's presence and knowledge of a fair market value appraisal undercuts the government's theory that the Consulting Agreement was a sham.

In response, Beauchamp denies that McMurrey has any knowledge of the Consulting Agreement. According to Beauchamp, McMurrey had no awareness of the document's existence until the government filed its motion to disqualify, and McMurrey never worked on the Consulting Agreement. Beauchamp posits that, "[i]f one of the defendants were to indicate a desire to obtain Mr. McMurrey's testimony about the [Consulting Agreement] appraisal, his testimony would be that he had no knowledge of this document at the time it was created and played no role in obtaining it from the appraisal company." D. Br. 7.

The court concludes that the government has failed to meet its burden as to this potential testimony. The government's sole evidence in support—the analysis listing McMurrey as FPMC's client contact—does not show that McMurrey has knowledge. McMurrey did not draft the document; indeed, the government submits no evidence that McMurrey ever saw the document. The government's conclusion that McMurrey was "potential[ly] involve[d]" with the agreement and "likely presen[t]" at its signing is speculative. Such speculation is insufficient to satisfy the government's burden to prove conflict of interests. *See In re Am. Airlines, Inc.*, 972 F.2d at 614.

C

The government also maintains that McMurrey's admitted involvement with the Emergency Room Agreement renders him a potential necessary witness:

> That an attorney—let alone a partner at a major law firm who served as a former Assistant United States Attorney—consulted on the deal at least tends to undercut the government's argument that the agreement was a complete sham. Further, it is highly likely that McMurrey would testify that the defendants' intentions—at least from his vantage point—appeared pure.

Gov't Br. 10.

The government's contentions are insufficient to warrant McMurrey's disqualification. The question for the court is not whether McMurrey could offer testimony that would benefit a defendant. Rather, disqualification is only appropriate if he is the *only* witness who could offer such testimony. *See Starnes*, 157 Fed. Appx. at 694. The government has not made this showing here, and the court thus concludes that it has failed to meet its burden.[3]

IV

The court now considers whether McMurrey should be disqualified based on his former representation of Craighead.

---

[3] Beauchamp posits that multiple witnesses would be able to offer the same testimony as McMurrey, including Rob Castle, a then-senior associate who worked on the emergency room deal with McMurrey.

A

When an attorney cross-examines a former client, "[a]n actual conflict may exist and the Constitution is implicated [because the] attorney . . . placed or places himself or herself in a situation 'inherently conducive to divided loyalties.'" *Perillo v. Johnson*, 205 F.3d 775, 801 (5th Cir. 2000) (quoting *Castillo v. Estelle*, 504 F.2d 1243, 1245 (5th Cir. 1974)). "There must be an 'actual' conflict and not 'a speculative or potential' conflict." *United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008) (quoting *United States v. Infante*, 404 F.3d 376, 391 (5th Cir. 2005)). "The question of whether a disqualifying conflict exists is highly fact-dependent." *Id.* In answering this question, four factors are particularly relevant:

> (1) whether the attorney has confidential information that is helpful to one client but harmful to the other client; (2) whether and how closely related is the subject matter of the multiple representations; (3) how close in time the multiple representations are; and (4) whether the prior representation has been unambiguously terminated.

*Id.*

B

In its brief, the government contends that McMurrey's former representation of Craighead will place him "in the undesirable position of deciding whether to use any confidential information obtained during his representation of Craighead to impeach him [at Beauchamp's trial]." Gov't Br. 12. The government relies on *United States v. Martinez*, 630 F.2d 361 (5th Cir. 1980), in which the Fifth Circuit held that an attorney had an actual conflict and the defendant's Sixth Amendment right to counsel was violated when the

attorney's "effective representation of his client would compel him to violate confidences" of his prior client. *Id.* at 363-64. In *Martinez* the attorney informed the district court of his conflict and that he was reluctant to violate his prior client's confidential information, but the court allowed him to proceed and examine his former client. *Id.* at 363. The Fifth Circuit noted that although the attorney's interrogation appeared vigorous, the court could not be sure that the attorney did not "refrain from pulling [some punches]." *Id.*

McMurrey does not admit to a conflict, as did the attorney in *Martinez*. In fact, Beauchamp responds to the government's motion by asserting that "McMurrey has and will advise the Court that his prior representation of Mr. Craighead was transient and insubstantial . . . [, and that] he never had any type of conversation or meeting with Mr. Craighead . . . that involved privileged or confidential information." D. Br. 13. Absent an admission by McMurrey, the government bears the burden of proving that he possesses adverse confidential information. *See In re Am. Airlines,* 972 F.2d at 614. As with McMurrey's necessary witness status, the government's arguments are speculative. The government assumes, without any supporting evidence, that McMurrey possesses adverse confidential information. But the government's own brief concedes that McMurrey told the government during its investigation of Beauchamp that he "was unaware of the connection between Craighead and FPMC/Beauchamp at [the time he represented Craighead]." D. Br. 6. Accordingly, the court concludes that the government has failed to show that McMurrey has

confidential information from Craighead that would be adverse to Beauchamp, as required to disqualify McMurrey. *See Burns*, 526 F.3d at 856.[4]

\* \* \*

Because the government has failed to meet its burden as to both of the alleged conflicts on which it relies, the court denies the government's motion to disqualify McMurrey.

**SO ORDERED**.

April 4, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[4]In the alternative, the government requests that the court require Beauchamp to consent to "potentially hampered representation" because of the "potential for Craighead testifying in this case[.]" Gov't Br. 12. The court declines to consider such a hypothetical at this time, and it denies the government's request, without prejudice to the government's moving anew for such relief if such a hypothetical conflict is realized.